Stanard, J.
The appellee, claiming as creditor of Hold, sought to charge the interest of Dold in property, the right to which had devolved on Dold’s wife during coverture, by the deaths of her father, brother and sister. For the debt, judgment had been rendered in December 1799, against Dold and his sureties in a forthcoming bond. The principal of the debt was about 580 dollars, and bore interest from October 1799. On that judgment, a Ji. fa. had been issued and returned nulla bona; a ca. sa. had also issued about the year 1801, on which Dold had been taken, and from the custody under which he probably escaped, as subsequent thereto in 1803, another ca. sa. issued, which was not served. *99 Many years thereafter, to wit: in the year the creditor had instituted against one of the sureties an action of debt on the judgment, and recovered judgment therein, part of which was thereafter levied. The following statement shews the character, nature, extent and condition of the interests sought to be charged with the debt:
James Brent, the father of Mrs. Dold, died in 1815, possessed of a considerable estate, real and personal. After his death, a paper purporting to be his will was attempted to be set up as such by some of his children; and a cross suit was instituted by Dold and wife in 1816, controverting this pretension, insisting that the father had died intestate, and claiming a division of his real, and distribution of his personal estate among his heirs and distributees, as upon an intestacy. A protracted litigation followed, which, in 1826, resulted in establishing the intestacy of James Brent, and consequently the title of Mrs. Dold (who would have been almost entirely disinherited had the will been established) to an equal share, with the other children of James Brent, of the real and personal estate of her father. Pending this controversy, a brother and sister of Mrs. Dold died, and their interests in their father’s estate devolved on Mrs.
Dold and the other surviving children, as their heirs and distributees.
In October 1826, after the intestacy of James Brent had been ascertained by the verdict of the jury, on the issue devisavit vel non, Mrs. Dold, by her next friend, filed a petition in the suit that had been prosecuted by Dold and wife to recover her share as heir and distributee of her father, stating that in that suit it had been ascertained that she was entitled to one fourth of her father’s estate, [her original share as one of six children, that devolved on her from her father, and her share of the shares of the brother and sister that died pending the controversy together, was about equal to one fourth of *100 her father’s estate], that her husband, from his habits, was incompetent to manage property, and in his hands it would be dissipated and wasted, without benefit to her and her children ; and that he was willing that it should be settled and placed in the hands of some fit trustee, to and for her separate use ; and praying that the decree of the Court might give it that destination.
' To this petition Dold answered, giving his unqualified assent to it; and the Court decreed that the real and personal estate in controversy in .that suit, to which Mrs. Dold was entitled, as one' of the distributees of her father, mother, brother ánd sister, be vested in a trustee to be held for her sole and separate use, &c., with a proviso, “that nothing therein contained should at any time thereafter be so construed as to affect the rights of the creditors of Dold (the husband), which may have attached upon the property of the wife before the execution of the said settlement.” The decree further confirmed a division of the real estate that had been previously made, and directed the delivery of the part allotted for Mrs. Dold’s share, to the trustee, to be held for the separate use of her and her heirs. The suit for the account and the distribution of the personal and the profits of the real estate, thereafter proceeded. The results of this suit shew that the share of Mrs. Dold, exclusive of her share of the slaves, amounted to about 4500 dollars, much the larger part of which arose from the rents and profits of the real estate, hires of negroes, and interest on personalty, accruing during the pendency of the suit; and that her share of the slaves was in value about 2700 dollars, the value of her share as distributee of her father, being about 1850 dollars, and as distributee of her brother and sister, about 850 dollars.
This subject was, by the decree of the Circuit Court, charged with the debt aforesaid, the aggregate of the principal and interest of which, up to the date of the decree, was about 1500 dollars.
*101 It is obvious that if the rights of the wife be measured by her equity to a reasonable settlement out of her rights in action, existing before, or devolving on her during coverture, and the voluntary assignment or surrender by the husband of his interests in such rights to J ° his wife greatly exceeding in value the settlement which this equity would entitle her to claim, be impeachable by his existing creditors, who have no means of getting satisfaction of their debts, but the interests, &c., voluntarily surrendered by their debtor, the comparative value of the subject charged, and the charge, fully justified the decree rendered in this case.
To the success of this appeal, it is necessary that the appellant should maintain the broad proposition that a husband indebted, may by his assent or surrender of his marital rights in the rights in action of his wife, and which if not reduced to possession during coverture, would survive to the wife, however large may be the value of those rights, deprive himself by such mere volition of the means of paying his debts, and frustrate the claims of his creditors, so far as the satisfaction of these debts may be dependent on the rights so by his assent or surrender yielded up to his wife.
It is to be regretted that such a question should have come before the Court in a submitted case; and the investigation and decision of it made, without the aid of argument, or reference to adjudications, or the principles by which it should be solved, on either side. Without such aid, the investigation of the question may be less complete: it has certainly made it more laborious.
The question arises in the case, and it is the duty of the Court to decide it; and I proceed to state the results of my investigation of it.
A cardinal rule of legal ethics inculcates the duty of being just before being generous. Donations, voluntary transfers, assignments or surrenders of rights, even in favour of wife or children, by a debtor, which might *102 have been used to provide for his debts, have under the influence of this pervading rule of the English law, been made to yield to the paramount claims of creditors. Even where a debtor, having a general power to aPP°^nt property which he never owned, exercises that power in favour of volunteers, the property in the hands of such volunteers is burdened with the debts of the appointer; if it be necessary for the satisfaction of them. This application of this rule shews it to be so searching that it reaches property which, though not owned by the debtor, he might have made his, but has voluntarily, without valuable consideration, made the property of others. Patridge v. Goss, 1 Eden’s R. 163; Hopkirk v. Randolph, 2 Brock. R. 132; Coleman v. Cocke, 6 Rand. 618 ; Jeremy’s Equity 376 ; 2 Lomax’s Law of Ex’ors 239; 2 Wil. Ex’ors 1037.
I think it may be safely laid down as a just deduction from the elementary principles of our law, that the general rule is, that the righfe of property of a debtor, ivhether in possession or in action, present or reversionary, in law or equity, and of value adequate to pay his debts, and without Avhich he is insolvent, and the payment of his debts must be frustrated, cannot by the mere volition of the debtor, in the form of assignment, surrender, or other modes of assent, pass to volunteers without valuable consideration ; and be thereby placed in the hands of such volunteers beyond the reach, and secure from the claims of such creditors. .'
What then is the nature of the husband’s right in the wife’s rights in action, which, if not reduced to possession during coverture, would survive to the wife; and what are the interests and powers of the husband and wife respectively in or over those rights during the coverture ? By the common law, marriage amounts to an absolute gift to the husband of all the goods, personal chattels, and other personal estate, of which the Avife is actually or beneficially possessed in her oavii right, and *103 of such other goods, personal chattels and personal estate, as come to her during the marriage. But to her choses in action, or claims to personal estate lying in suit, the husband is not absolutely entitled, unless they are reduced to possession during her lifetime. As to chattels real, of which the wife is or may be possessed during the coverture, he has an interest therein in her right, and he may by alienation during coverture absolutely deprive her of her right therein, and if he does not alien, she will be entitled to them if she survives him, and if he survives he will be entitled to them in virtue of his marital rights. 2 Story’s Eq. 788; 1 Roper on Pro. 166; Jeremy 197, and seq.
Of these rights to personally lying in suit, some may be recoverable by action at law, and for some the remedy to reduce them to possession is by equitable or ecclesiastical jurisdiction. Whenever the husband has reduced the personal estate of the wife, of whatever nature it may be, whether legal or equitable, he thereby becomes the absolute owner of it. This being the just exercise of his legal marital rights, Courts of Equity will not interpose to restrain or limit this ownership. Whenever he is pursuing the remedies at law, for the purpose of reducing such personal property into possession, Courts'of Equity are for the same reason ordinarily passive. In passing, 1 may suggest that the question seems not definitely settled, respecting the power and duty of a Court of Equity, under particular circumstances, to interpose to prevent the husband from obtaining possession even by legal remedies, of the personal property of the wife, until he shall make a reasonable settlement out of it on the wife; yet the exercise of such power has the sanction of some cases, and is sustained by strong reason. 2 Story’s Eq. 788, et seq.; 1 Rop. on Prop. 169 p Jeremy’s Eq. 197, et seq. But ordinarily, the rights to'personalty, lying in suit of the wife, for which there is a legal remedy, and a present title to reduce to possession, *104 may be made the absolute property of the husband by such remedy, or by acquiring possession, and is free from any claim or equity of the wife,
The rights of the wife lying in suit for the recovery possession of which, the remedy is of equitable or ecclesiastical jurisdiction, come under a different category. When such rights are sought to be enforced by the husband, or perhaps even without such suit, on a claim in equity on behalf, of the wife, that Court raises up and enforces an equity in her favour, which sustains a title in her to a reasonable provision out of the property in action, and that Court will withdraw from the marital power of the husband a reasonable portion of the property in action, and dedicate it to the wife and her children. This title to settlement is the creation of the Court of Equity, and is called the wife’s equity. It attaches unqualifiedly only to property which is to be reached by the aid of the Court of Equity, and the condition on which that aid is given, is the equitable one, that a reasonable part of the property shall be settled to the use of the wife and her children. Such are the rights of the wife in their amplest extent in her choses in action, or other interest of the wife recoverable in equity, and which are recovered by such remedy during the coverture, according to the doctrines of English jurisprudence. Beyond this, neither the principles of their jurisprudence, nor, so far as I am aware, any judicial decision of her Courts, or dictum of her Judges has extended them. Our Courts ought not, cannot, as expounders of the law, give them a wider scope. Even to this extent they have been in practice, but rarely recognized and applied. They have been so tardily and rarely in our practical jurisprudence applied, and so timorously and doubtingly urged and insisted on, that numerous as the occasions which the confident reliance on them would have afforded in the practice of this state for the assertion of those rights in behalf of the wife of a failing *105 husband, and consequently for bringing the question for adjudication by the Court of final resort, it was for the first time decided in the year 1843 in the case of Browning v. Headley, 2 Rob. R. 340. In that case the English doctrines respecting the equity of the wife to a reasonable settlement, were (and I think rightly) recognized and acted on.
What then are the respective rights and interests of the husband and wife in such rights in action of the wife ? During coverture, the husband has a right to reduce, or transfer to others the right to reduce the property embraced by the rights in action, to possession, and on this is engrafted the equity of the wife and children to a reasonable settlement out of it. On the death of the husband (the wife surviving) before the reduction to possession, the right survives to the w death of the wife (the husband surviving Mh^ interest therein survives to the husband administration to the wife, and absolved /from gation to distribute. The husband thei|¡ 1| right jure ma,riti to the property, the possession recovered during coverture, charged with the''^ai*F'Sf the wife to a settlement. The interest of the wife is an equity, and covers so much of the property as may be necessary to satisfy her equity, and that of the husband is legal jure marili to the surplus. If the subject to which the right in action attaches, be held by a trustee or quasi trustee, he is during the coverture trustee of the husband and wife according to their respective interests in the subject he holds, and of which the possession is sought in virtue of those rights. Such are the respective interests of husband and wife if the possession be recovered during coverture, and if before the recovery, or the judicial ascertainment or recognition of, those rights, the coverture ceases by death, then in effect the beneficial interest devolves on the survivor; to the wife surviving, by virtue of her legal right of survivorship; *106 to the husband, by virtue of his right of administration to his wife.
Such being the rights of husband and wife respectively during coverture, suppose during the coverture the effectual transfer of the subject in action by the husband and wife, and the reduction of the property to possession by the transferree, could the title be otherwise regarded than as derived from the husband and wife respectively to the extent of their respective rights therein as above stated;. and his right in the entire property as compounded of the parts to which husband and wife were respectively entitled ?
What are those respective interests of husband and wife ? Are they not rights of property ? Are not those, especially of the husband, of appreciable value? Cannot they be assigned by him for value ? Cannot they be made available to pay his debts, if by his voluntary and gratuitous transfer, assent, or surrender, they do not pass to the hands of others ? To these questions the answers must be in the affirmative. The commissioners of bankrupts are authorized to assign only the rights of property of the bankrupt in possession, reversion or in action, and which the bankrupt could legally depart withal. Yet, under their assignment, such an interest as this would pass, and the assignee take it only subject to the equity of the wife to a reasonable settlement if reduced to possession while the husband lives. The like effect would be produced by a general assignment of the husband of all his rights in possession or in action.
Can such voluntary act screen the right claimed and possessed under it from the claims of creditors, which but for the voluntary act, would charge it ? In the theory or morals of the law, does the efficacy or inefficacy of the claim of a volunteer under an insolvent debtor, (and made so by the voluntary transfer or surrender to the volunteer to protect the property gratuitously surrendered by such debtor from the claims of the creditors,) *107 depend on the mode in which the gratuity is made, or the nature of the right of the debtor in virtue of which the volunteer may have acquired the property ? Or does the title of the donee to a part of the property, independent of the donor, more effectually screen the part to ' . r which the donor was entitled, from creditors, than it would have been had the donation or surrender of the part owned by the donor been made to a third person ? None of these questions can be answered affirmatively, for such answers have no countenance from general principles, or adjudged cases.
The interests of the husband to the rights in action of the wife, under certain aspects, are much more stable and enduring, than the interests of the donee under a general power of appointment in the property that might be subjected to that power. In the former case, though the husband be passive, yet if the property be reduced to possession, on the claim of the wife to have it so reduced to possession, and to have her equity satisfied out of it, the surplus belongs absolutely to the husband ; and the wife living with and supported by him, he is entitled to the accruing interest or revenue from it; and if not reduced to possession during coverture, if he survived the wife, he would be beneficially entitled to all. But in the case of the power, if the holder of it be passive, and he die without executing it, no interest therein devolves upon him, or is chargeable by his creditors. Yet if he exercises the power in favour of volunteers, the property they take under his appointment is chargeable in their hands with his debts. The principles of law which would charge such a subject in the hands of volunteers with debts, would, a fortiori, charge in such hands a subject in which the debtor had a subsisting, assignable, present and vendible title to a part, and contingent interest in the whole, and acquired by the volunteer in virtue of the gratuitous transfer or assent of such debtor.
*108 The husband having the interest before defined, in rights of action of the wife, and having the right to assign them, iet us suppose a voluntary surrender or assignment by him of them, not to the wife, but to some other person, to children of a former marriage, to other r kindred, or to the trustee who holds the subject to be recovered. Could the volunteers acquiring or retaining the possession of the subject under such assignment or surrender be entitled to hold it discharged of the debts of the insolvent husband, and made insolvent only by giving efficacy to the title of such volunteers against the creditors ? An affirmative answer to this question would be approved by few if by any. Does the circumstance that the party in whose favour the assignment or surrender is made, is the wife from whom the right surrendered was derived, warrant any change in the answer ? According to established principles of law, the wife or children claiming as volunteers, have no better title than others against creditors of the husband or father. Is it because the right surrendered was derived from the wife that it shall be protected in her hands from the claims of creditors ? That cannot be: for if it were, then the post-nuptial settlements of the wife’s property, and especially of reasonable portions of it, would, for the like reason, be a fortiori valid; and yet no doctrine is better settled than that such settlements by an insolvent husband yield to the claims of creditors.
Looking to the decisions of the Courts of Westminster Hall, I have found none that maintains, or, I may add, that gives countenance to the broad proposition, that, irrespective of the amount of the surrender by the husband, the effect thereof on his solvency, or the amount of his debts, the voluntary surrender of his interest in her choses in action, for the recovery of which the re- . medy is in a Court of Equity, protects during the coverture the subject recovered or recoverable on such choses in action from the claims of the husband’s creditors; *109 and looking to the elementary principles of the English law I can find no root from which such a doctrine could spring, or by which it can be nourished.
An opinion of Chief Justice Marshall has been brought to my notice by one of my brethren, Gallego v. Gallego’s ex’ors, 2 Brock. II. 285, which I think in its reasonings and results does uphold that doctrine.
No one has a higher reverence than I for that illustrious citizen and eminent Judge. I have not differed from him on the question in judgment, without a most careful investigation of the principles by which my opinion has been ultimately moulded, and deliberate examination of the principles and reasons on which his is founded.
I may premise that it does not appear from the report that the case was argued before him. It appears that at the time that opinion was pronounced, a suit was pending in the Superior Court of Chancery for the Richmond district, of a creditor of the husband to attach the legacy in the hands of the executors : and that three years after, the State Court rendered a decree in favour of the attaching creditor, decreeing satisfaction of the debt (which was not one fifth of the amount of the legacy) out of the legacy. That decree was directly in conflict with the opinion given in the case in the Federal Court, and against the party in whose favour the decree in the Federal Court had been pronounced. No appeal appears to have been taken from it. If applied for, it was rejected by the Court of Appeals, and that Court must have concurred with the Judge of the Richmond Chancery Court in holding the legacy liable to the debt of the husband. If not applied for, the acquiescence in it of the wife and her counsel is to be inferred.
These facts impair in some degree the authority of the opinion, and deny to it the deference due to an opinion from that source, given on full argument and ma *110 ture consideration. That it was not the result of maime consideration after full argument-, will, I think, be manifest on a careful review of it.
C The opinion seems to assume as an elementary prin^ipl®1 that the marital right does not attach to a chose in ' action of the wife while it continues a chose in action, and the husband has no interest in it until he reduces it to possession. Thus it is said, that “ the marital right does not extend to the property while a chose in action.” Legacies to the wife are classed “ with choses in action, and vest in equity in the wife herself, in which the husband participates so far only as to assert her title in a Court of Equity.”—“It is not subject to liabilities which attach to that which is his, until it shall be reduced into possession.”—“ There is no title in the husband to the thing itself.”—“ The husband has no interest in the legacy; he had only power to make it his by reducing into possession.” Now it seems to me that these propositions are defective in that precision and accuracy which so generally characterize the judicial opinions of the profound jurist by whom they are stated. They recognize no degrees between no title to, and interest in, the subject, and an absolute title or interest; and infer no title or interest, because it is not absolute and unconditional. The marital right, though it confers no absolute title to the property while a chose in action, yet attaches to the choses in action, vests an appreciable interest therein, gives the right to make the property of which it is the representative, absolutely that of the husband ; and this right vendible, assignable, is the subject of sale or gift to the extent of the husband’s interests. As the whole property is not in the husband, his liabilities do not attach to the whole property, yet why should not they attach to the extent of his interests in that subject as well as to his qualified conditional interests, derived from other sources than the marital right, and which cannot be reached by execution at law ? In *111 deed another part of the opinion seems to countenance the doctrine that interests of the husband which could', not be reached by execution, could not be subjected liability to his creditors. But that is certainly incorrect, Equitable interests in property held in trust for another, or of a nature not to be reached by execution, can all be subjected in equity to debts. 2 John. C. C. 283; 4 John. C. C. 671,683, 687; 20 John. R. 554. “ He has no title to the thing itself.” But he has title to make it his during coverture, or if he survives the. wife, and by ceding that title to a volunteer, the volunteer acquires the property, or a valuable part thereof. Why should that be less liable to creditors than is the property acquired by volunteers under the appointment of the debtor? “The husband has no interest in the legacy.” It has been shewn that he has a valuable interest. If no interest, how could his assignment pass any thing to his assignee ? How could the assignee of the bankrupt claim ? The predicament of the claim of the assignees of a bankrupt is noticed by the Judge, and he seems to regard the assignee as placed by law in the position of the husband, and having the right in virtue of that position, and exercising the marital right to reduce the interest to possession, and not the pre-existing rights of the creditors. His standing in the place, and representing the husband, is thus considered as the foundation of his title. This, with great deference, is, I think, inaccurate. The declaration in treatises or judicial decisions, that the assignee represents the husband, is not to shew why he has the right to claim, but to qualify or limit his right: to distinguish his right from that of a special assignee; to indicate that it is subject to the same equities of the wife, that it would be if asserted by the husband. On this distinction between the right of such assignee, and that of a special assignee, it has been decided that the assignee in bankruptcy is not only subject to the equity of the wife, if the property be re *112 duced to possession during the life of the husband, but if he dies (the wife living) before it be reduced to possession, the legal right of the wife of survivorship attaches and defeats the rights of the assignee. Whereas, sPe°iai assignments for value, it has been in many cases adjudged a quasi reduction of the chose in action to possession, which defeats the legal right of survivor-ship, and such assignee is only subject to the wife’s equity to a settlement, whether she survives her husband or not. The question respecting the rights of the special assignee was fully discussed in the case of Browning v. Headley, 2 Rob. R. 340. It was not expressly decided in that case, as the Court were of opinion that the wife’s equity to a settlement covered the whole property in that particular case. I, however, understood the Judges who constituted the Court to be all of opinion that such special assignee was subject only to the wife’s equity. The assignee of the bankrupt derives his title from the conveyance of the commissioners of bankruptcy, of all of the rights and interests of the bankrupt. That conveyance acts on the chose in action of the wife, and gives title to reduce them to possession, because it conveys all the rights of property of the husr band bankrupt, and his rights and interests in the choses in action of the wife, are valuable and appreciable.
The opinion suggests that in that case there was reason to believe that the husband was insolvent, and had relinquished to his wife, that she might receive and enjoy the legacy bequeathed to her, secured from his creditors ; and then proceeds thus : “ In this there is no injustice ; his creditors trusted to his own resources for the payment of their claims, and had no right to count on the fortune of Mr. Gallego.” Prom these positions I am constrained to dissent. The first might be correct if the justice of the moralist or speculative philosopher were the test. In the code of the moralist, the duty of making provision for wife and children from the pro *113 perty of the debtor, may be of equal, nay of higher obligation, than that of devoting that property to the payment of debts. But that justice of which the standard is to be fixed by the rules suggested by legal ethics, by that code which commands that we should be just J before we are generous; which forbids the voluntary appropriation as a provision for wife and children, of the property without which the debts of the husband or father cannot be paid; which gives an overruling sway to the claims of creditors for satisfaction, when they are encountered by volunteers claiming under the debtor; which does not recognize and sanction the voluntary transfer or surrender of the rights of the debtor, which, but for such surrender, would place in the hands of the debtor adequate means to discharge his debts, and by his transfer or surrender has placed in the hands of the volunteer much more than would suffice to pay the debts of the donor, as an effectual title against the creditor, would be violated by denying relief to the creditor against the claim of the wife under such transfer or surrender.
The proposition which vindicates the title of the wife under the relinquishment, on the ground that the creditors of the husband had trusted to his own resources, and had no right to count on the fortune of Mr. Gallego., is I think inaccurate. The last member of it is equally applicable to all and any postnuptial accessions of fortune by the wife, whether by donation, succession, bequest or otherwise. In every such case, it might with equal propriety and accuracy be said that the creditors had no right to count on the fortune of the donor, ancestor or testator, from whom such accessions are derived, as it was said in that case the creditor had no right to count on the fortune of the testator who bequeathed the legacy; and would equally vindicate the voluntary relinquishment and appropriation of all such accessions, to the use of the wife, to the exclusion and *114 disappointment of the husband’s creditors. But this certainly is not so, and the proposition that conducts to such conclusion is incorrect. The liability of the interests of the debtor to the claim of creditors does not depend on persuasion, legal intendment or presumption, that the creditor counted on, or gave credit on the faith of any particular property; and the liability of any such interests to creditors is no wise dependent on the affirmation that such presumption or intendment exists .in respect to it. All existing interests in property of the debtor, and subject to his disposition, are chargeable with his debts, without regard to .the mode, time or source of their acquisition^" The creditor encounters the hazard of all those contingencies or casualties which may deprive his debtor of ability to pay: he is entitled to the benefit of all such, by which he acquires the eans of paying them.
It is conceded by the Judge, that there is no case reported in which the claims of creditors on the one side, and the wife under the surrender or relinquishment by the husband, have encountered and been adjudged. The absence of a case sustaining the right of the creditor to question the rights of the wife claiming under such relinquishment, as, I think, it manifestly appears from the opinion, had the most efficient influence in recommending to the adoption by the Judge of the conclusion that no such right existed in the creditor. Now, in my judgment, this silence of the books, of Judges, lawyers and commentators, is eloquent in favour of an opposite conclusion.
The general principles of law supply the general rule which subjects in the hands of volunteers, the interests voluntarily passed from, or transferred by the debtor ; and voluntary dispositions in favour of the wife, are equally with others within the rule. The reports of the decisions of the Court and treatises on the English law abound with cases shewing the rights of the wife, and *115 the rules governing the case of postnuptial voluntary settlements of property derived through her, or otherwise, when the interests claimed under such settlements are required for the payment of debts. By these general rules, such interests so acquired are liable for debts. ' A -
If the case of the surrender, transfer or relinquishment of the marital right in a chose in action of the wife, was one in which by the mere volition of the debtor, a right could be acquired by the volunteer, which creditors could not reach, it would be a limit to the operation of the general rule, and form an exception; and the absence of any case, shewing that such an exception has been made to the general rule, or I may add, that such exception has ever been claimed to exist, is most cogent to prove its nonexistence.
I think dissent from the opinion is vindicated by the foregoing views. If the defects in precision were sup-, plied, and the inaccuracies in doctrine which I have pointed out were rejected from that opinion, what would remain of it would not sustain its conclusions; and I doubt not, that no one would have brought to a review of it a more candid and unprejudiced mind than the venerable author, or more readily have yielded to the convictions that might result from such review, regardless of their conflict with its conclusions.
The resolution of the broad and general question which has been discussed, is decisive of the pretensions of the appellant.
Independent, however, of the decision of the general question, my opinion is, that in this case the subject was chargeable with the debt in question. For that debt the remedy at law had been pursued and exhausted. The fund that has been charged with it consisted of rents and profits of real, and interest and hire,s of personal estate, to an amount nearly three times that of the debt charged. These were past profits of the principal estate, real and personal, that had devolved on the wife *116 from father, brother and sister; and during the time they had been accumulating, the wife and children (it must be intended) had been supported by the husband, or by property derived through him from his father. Under such circumstances the equity of the wife would not attach to such profits; but the husband, they being recovered before coverture, would be entitled to them free from this equity; (2 Story’s Eq. 705, <§. 1415,) and in respect to the rents and profits of the real estate, he was at law and in equity absolutely entitled to them. Of that real estate there had been actual possession, by virtue of such actual possession by one or more coparceners, and they were accountable at law to the husband, for the rents and profits, and he might sue therefor without joining the wife. This subject ought to have been charged, though the principal of the distributable share of the personal estate should be protected in the hands of the wife and her trustee by the relinquishment of the husband. To the tenancy by the curtesy of the husband in the real estate, he had legal title; and that was clearly chargeable with his debts irrespective of his voluntary surrender thereof to the wife.
The other Judges concurred. Decree affirmed.